FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

99 NOV 16 PM 3:20

CLERK, U.S. DISTRICT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

GREGORY T. FLYNN, M.D.,

    Plaintiff,

vs.

CASE NO: 97-2911-CIV-T-26E

SARASOTA COUNTY PUBLIC
HOSPITAL BOARD d/b/a
Sarasota Memorial Hospital,

    Defendant.
_____/

## PLAINTIFF'S AMENDED RESPONSE TO NOTICE OF CHARGING LIEN

Gregory T. Flynn, M.D., files this amended response to the Notice of Charging Lien by adding paragraph 8 to the affirmative defenses, and says:

1.    On October 25, 1994, the law firm of Gardner, Wilkes, Shaheen & Candelora, ("Gardner, Wilkes") agreed to represent Gregory T. Flynn, M.D. pursuant to a written undertaking. A copy of the agreement is attached as Exhibit A. Pursuant to the agreement, plaintiff deposited $5,000 with Gardner, Wilkes.

2.    Plaintiff initiated the above styled action in December, 1997, approximately three years after plaintiff received the Gardner, Wilkes' written undertaking attached as Exhibit A.

3.    Before plaintiff filed the above styled action, plaintiff, on several occasions, requested that the Gardner, Wilkes firm undertake the representation on a contingency fee basis, and after the beginning of the action, plaintiff

215

requested that Gardner, Wilkes convert the representation from an hourly rate to a contingency fee basis. Both before and during the representation, Gardner, Wilkes refused and insisted that it be paid prevailing market hourly rates. Gardner, Wilkes was unwilling to assume any risk of non-payment in connection with the representation. During the trial of the above styled action, plaintiff compensated Senior-Partner Wilkes at the market rate of $240.00 per hour for the time he expended for trial preparation, trial and post trial representation, all of which has been paid in full.

4. At no time before or during the trial did Gardner, Wilkes suggest or advise plaintiff that it should be compensated by any "write up", "result fee" "upward adjustment," or on the basis of any sort of contingency, and plaintiff did not agree to any such arrangement. At all material times, the Gardner, Wilkes law firm demanded that it be compensated at market rates. There was no contingency, and Gardner, Wilkes was to be paid at market rates for all time expended, even if plaintiff obtained a defense verdict and recovered nothing.

5. Market hourly rates are by definition a "reasonable" fee, and at all material times, Gardner, Wilkes has been paid in full based on its market hourly rates.

6. On August 5, 1999 after the trial concluded, and after the parties had reached a settlement of all pending matters, including this action, Gardner, Wilkes sent plaintiff a letter suggesting that an additional fee of $250,000.00 beyond the hourly market rate would be appropriate. A copy of the letter is attached as Exhibit B.

7. At all material times, plaintiff has objected to the payment of any fees above and beyond the market hourly rates that he previously paid to the Gardner, Wilkes firm. For handling the above lawsuit, on information and belief, plaintiff has already paid the Gardner, Wilkes firm approximately $300,000 in fees and out-of-pocket expenses. In addition, plaintiff has paid co-counsel, Anthony T. Leon, approximately $157,000.00 in fees and $4,300.00 in costs. Plaintiff also paid Attorney Bruce Rogow the sum of approximately $162,500.00 for his post-trial legal services. The total sum of approximately $620,000.00 that plaintiff has paid his three law firms, constitutes a reasonable fee for the services rendered in handling the above styled action at prevailing market hourly rates.

8. Since the Gardner, Wilkes law firm began rendering legal services to plaintiff pursuant to the written undertaking attached as Exhibit A, plaintiff has paid additional fees to the Gardner, Wilkes law firm for handling several additional matters for plaintiff, all at prevailing market hourly rates.

9. The effort to charge plaintiff an additional $250,000.00 above and beyond prevailing hourly market rates results in a clearly excessive fee and is therefore not enforceable according to Rule 4-1.5(d), *Rules Regulating the Florida Bar*.

**AFFIRMATIVE AND OTHER DEFENSES TO CHARGING LIEN**

1. The charging lien is not timely.

2. There was no understanding, express or implied, between plaintiff and the Gardner, Wilkes firm that the payment of an additional $250,000.00 or any other "result fee," "write up," contingency fee or upward adjustment beyond

3

market hourly rates was either dependent upon recovery or would come from the recovery.

3. The effort to collect an additional $250,00.00 by way of a "write up," "result fee" or "upward adjustment" is an effort to collect a contingent fee that is not based upon a written agreement contrary to the provisions to Rule 4-1.5(f), *Rules Regulating the Florida Bar*

4. There was no understanding, express or implied, that payment of any costs or fees based on Gardner, Wilkes' standard hourly rates incurred in this action after April 21, 1999, be made out of any settlement proceeds due and owing to plaintiff.

5. Enforcement of the charging lien is barred by the doctrine of unclean hands. Actions to enforce charging liens are equitable in nature, requiring the party seeking to enforce the charging lien to come into equity with clean hands. Gardner, Wilkes does not come into equity with clean hands in that: it is unreasonably seeking a clearly excessive fee where there is no agreement that allows for any such fee; it is forcing plaintiff to withhold $250,000.00 in escrow pending resolution of its charging lien claim; it sought to withdraw from representation of plaintiff in all pending matters on the eve of trial in this action because of alleged non-payment of its outstanding costs and fees which were based solely upon Gardner, Wilkes' standard hourly rates; in accordance with its written agreement with plaintiff, it has for approximately five years sent monthly interim statements to plaintiff for its services rendered based

on its standard hourly fees and never advised plaintiff that it believed it would be entitled to any additional fees in the event of any recovery; in accordance with its written agreement with plaintiff, it has for approximately five years received payment from plaintiff for services rendered based solely on its standard hourly rates, including its use of plaintiff's $5,000 initial deposit to satisfy its bills for services rendered based on its standard hourly rates; it has created and then sent plaintiff a Billing Statement and Recapitulation which included the $250,000.00 excessive charge as part of the balance owed for the purpose of imposing a charging lien and requiring plaintiff to set aside that amount in escrow; during the course of the nearly five years of representation, Gardner, Wilkes made no offers to reduce its standard hourly rates or refund plaintiff any money for fees already paid where Gardner, Wilkes was unsuccessful in its representation, including a related prior federal action that was dismissed and the loss of the subsequent appeal to the Eleventh Circuit, or the failures before the hospital Boards to gain reinstatement of plaintiff's hospital privileges.

6.     Gardner, Wilkes is estopped or has waived any alleged right after the fact to charge an additional $250,000.00 result fee based upon the firm's approximately five year prior course of conduct in charging and collecting fees from plaintiff for services rendered based solely upon its standard hourly rates, and in accordance with the written fee agreement attached as Exhibit A.  Plaintiff relied to his detriment on Gardner, Wilkes above-referenced prior course of

conduct by settling the matter for less than he would have, if he had been advised that Gardner, Wilkes would seek to impose a charging lien against plaintiff for a clearly excessive fee.

7.      There is no consideration supporting the claim for a $250,000.00 "result fee" or "write up."

8.      According to Rule 4-1.5(f)(2) Rules of Professional Conduct, "Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding or by the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client." Furthermore, Rule 4-1.5(d) provides that attorneys fee agreements "not in compliance with the Rules Regulating The Florida Bar," are not enforceable. Gregory T. Flynn, M.D. has never signed a fee agreement of any kind with Gardner, Wilkes. Accordingly, since the claim to $250,000 "result" or "write up" was contingent upon the successful outcome of the litigation, the claim is not enforceable.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail to, Richard Benjamin Wilkes, P.O. Box 1810, Tampa, Florida 33601-1810 and David A. Wallace, Esq., Williams, Parker, et al.,

P.O. Box 3258, Sarasota, FL 34230-3258 this /5 day of November, 1999.

                                JOHNSON, BLAKELY, POPE,
                                BOKOR, RUPPEL & BURNS, P.A.

                                By: _____
                                F. Wallace Pope, Jr., Esq.
                                P.O. Box 1368
                                Clearwater, FL. 34617
                                (813) 461-1818
                                FBN 124449
                                SPN 00002797

200541

ANTHONY T. LEON
L. JOSEPH SHAHEEN, JR.
KEVIN J. WILCOX
RICHARD WILKES

TAMPA, FLORIDA 33601(818)
TELEPHONE (813) 221-8000
TELEFAX (813) 229-1597

October 25, 1994

Gregory T. Flynn, M.D.
Florida Pain Institute
Waldemere Medical Plaza
1921 Waldemere Street, Suite 707
Sarasota, FL  34239

     Re:   Sarasota Memorial Hospital
           Our File No. 94-004

Dear Dr. Flynn:

    We have agreed to represent you in connection with Sarasota Memorial Hospital's suspension of your staff privileges. We are pleased that you have selected this firm to assist you in this matter, and would like to take this opportunity to confirm our fee arrangement for same.

    For any and all services rendered, we will be paid a reasonable fee. This will be based on several factors, including our time, which means charges based upon an hourly rate for the attorney/paralegal performing a given service at the time of performance. This rate will vary from $110 to $220 per hour, depending upon the experience and level of seniority of the attorney or paralegal involved. These rates are subject to upward adjustment from time to time. We will, to the extent possible, use junior attorneys and paralegals to perform the work, limiting the participation of senior attorneys. I anticipate that I will be predominantly involved in the work on this file, and my current hourly billing rate in matters of this nature is $195.00 per hour.

    In addition to charging for services rendered, we will also bill you for out-of-pocket costs incurred, including, but not limited to travel expenses, meals, lodgings while away from the office, telephone calls, court fees, photocopying, etc.

    We will keep careful track of our time and expenses. On a regular interim basis, usually monthly, we will submit statements based on services rendered and expenses incurred to a then current date. If there is a particular form of statement you wish used, please advise us.

    As is our practice and as we discussed, we require a deposit for new clients. In this matter, we have agreed a deposit of $5,000.00 is in order. The $5,000.00 deposit was placed in our trust account and our statements will be rendered against the deposit. We ask that the deposit be replenished each billing period to its initial level. Of course, any portion of the deposit not expended at the termination of this matter will be returned.

EXHIBIT A

You may at any time discharge us. In such an event, however, we will be entitled to compensation for services rendered and expenses incurred through the date of discharge. Likewise, we may terminate our services upon reasonable notice, not less than thirty (30) days, in the event our statements are not paid within a reasonable period of time, or in the event our relationship in this matter develops to the point that we do not feel that we can conscientiously provide representation in your best interest.

Finally, so that there is no misunderstanding as to the nature of services for which we will make an hourly charge, I provide the following: all conference time with you, witnesses, potential witnesses and such other persons as we may deem appropriate; conference or trial time before any court or tribunal; time spent in travel or on the telephone regarding this matter; such conference time between attorneys in this office as we may deem necessary; and legal research. In addition, when necessary and desirable in our sole opinion for more than one attorney to attend a conference, confer with a witness or otherwise participate in concert with other attorneys in this office at the same time on the same matter, our hourly charges will include the hourly charges for all attorneys involved.

Once again, let me express our appreciation for the opportunity to be of service to you in this regard. We look forward to working with you.

    Very truly yours,

    GARDNER, WILKES, SHAHEEN & CANDELORA

    By _____
        Richard Benjamin Wilkes

RBW:rmb

## GARDNER, WILKES, SHAHEEN & CANDELORA
### ATTORNEYS AT LAW

RICHARD B. WILKES

2650 SUNTRUST FINANCIAL CENTRE
401 EAST JACKSON STREET
TAMPA, FLORIDA 33602

TELEPHONE (813) 221-8000
FACSIMILE (813) 229-1597
E-MAIL: RWILKES@GWSC.COM

MAILING ADDRESS:
POST OFFICE BOX 1810
TAMPA, FLORIDA 33601-1810

August 5, 1999

### ATTORNEY/CLIENT PRIVILEGED COMMUNICATION

Dr. and Mrs. Gregory T. Flynn
4929 Lyford Cay Road
Tampa, FL 33629

Dear Greg and Myrna:

After my conversation with Greg on August 4, 1999 regarding our final billing, I spoke with Bruce Rogow, as Greg and I had discussed. Bruce suggested that I write a letter to you setting forth my thoughts and reasons for suggesting an adjustment to our fee that would be in excess of our hourly rates.

It has always been my understanding that we would charge you a reasonable fee for our services. One of the most significant factors in determining a reasonable fee, is the result obtained. We have billed you on an interim basis at our standard hourly rates although we have made adjustments to those hourly rate charges on at least one occasion when you noted that you thought that certain charges were not reasonable. More significantly, we have at various times waived our right to timely payment of our statements. You have often, and continue to have, a large accounts receivable balance.

This is not to say that you have not spent a considerable amount of money in this epic dispute with the hospital. You have; although you have spent considerably less in winning than they spent in losing. I also understand that your legal expenses arose, not from any wrongdoing on your part, but from wrongdoing by the hospital. That is unfair, but ultimately the legal system worked. While you were in the right, so was our law firm. We did not create the problems, but helped you to solve them.

EXHIBIT B

Gregory T. Flynn, M.D.
August 5, 1999
Page 2

In my discussion with Mr. Rogow he noted that these kinds of fee arrangements, where the lawyer is to be paid a reasonable fee, can only work well if there is good will between the people involved. As I mentioned to you on the telephone, I am not interested in any way in getting into any type of adverse relationship with you. In light of all of the circumstances, many of which are reviewed in Mr. Buell's affidavit in connection with our application for attorneys' fees, an additional fee of $250,000, in addition to the hourly rates, would be conservative and appropriate. I would note in this regard that the fees should also be deductible to you, and therefore would in all likelihood cost you approximately 60% of this amount.

However, there is no science to this calculation and as noted by Bruce, everyone needs to have good will in order to make these arrangements work well. Please give the matter some thought at your convenience and let's work this out in a way where everyone is left with good feelings. I am very happy that an excellent result was obtained for you and your family and that we were able to be a part of it. I look forward to hearing from you.

Sincerely,

Richard Benjamin Wilkes

RBW/sf

**GARDNER, WILKES, SHAHEEN & CANDELORA**