

FILED

CM

01 JUL 31 PM 3: 13

CLERK U S DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### (Tampa Division)

### CASE NO. 97-2911-CIV-T-26E

GREGORY T. FLYNN, M.D.

     Plaintiff,

v.

SARASOTA COUNTY PUBLIC HOSPITAL
BOARD d/b/a Sarasota Memorial Hospital

     Defendant.

_____/

GARDNER, WILKES, SHAHEEN
& CANDELORA, P.A.

     Claimant,

v.

GREGORY T. FLYNN, M.D.,

     Plaintiff,

_____/

### PLAINTIFF'S MEMORANDUM OF LAW FILED PURSUANT TO THE COURT'S REQUEST FOLLOWING EVIDENTIARY HEARING ON CLAIMANT'S CHARGING LIEN

The Plaintiff, GREGORY T. FLYNN, M.D., by and through the undersigned counsel, and pursuant to this Court's request following the evidentiary hearing which occurred on July 16 and 17, 2001, files this his Memorandum of Law on Claimant's Charging Lien, and states as follows:

### *THE VALIDITY OF CLAIMANT'S CHARGING LIEN MUST BE ANALYZED UNDER FLORIDA LAW*

The rights and obligations of parties to a fee contract applicable to federal litigation, such as those at issue in the instant matter, are governed by state law. *Zaklama v. Mt. Sinai Med. Ctr.*, 906 F.2d 650, 652 (11th Cir. 1990). The validity of the subject attorney fee contract is governed by

291

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

Florida law because it was executed in Florida, and the Plaintiff's attorneys are members of The

Florida Bar. *Olmsted v. Immanuel*, 783 F.2d 1122 (Fla. 4th DCA 2001).

## *CLAIMANT'S CHARGING LIEN IS UNTIMELY*

The Florida Supreme Court holds that, for an attorney's charging lien to be imposed, Florida

law requires: (1) a contract between the attorney and the client; (2) an express or implied

understanding that payment is either contingent upon recovery or will be paid from the recovery; (3)

an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) timely notice

of the charging lien. *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertink, P.A. v. Baucom*, 428

So.2d 1383, 1385 (Fla. 1983). For notice of a charging lien to be timely, the charging lien must be

pursued "before the entry of the final judgment." *Id.* An attorney who fails to timely perfect his

charging lien by failing to provide the client with notice of the charging lien prior to final judgment

*cannot* recover as the lienor. *See Id.; see also Citizens & Peoples Natl. Bank of Pensacola v. Futch*,

650 So.2d 1008, 1015 (Fla. 1st DCA 1994). In the instant matter, Claimant failed to provide

Plaintiff with timely notice of its charging lien, and, therefore, cannot recover as lienor.

Final judgment in the underlying matter was entered, and the case was closed, on May 27,

1999. [*See* D.E. #172]. Accordingly, Claimant was required to serve notice of its charging lien on

Plaintiff prior to May 27, 1999. Yet, Claimant did not serve its notice of charging lien on Plaintiff

until October 12, 1999 -- nearly *five months after judgment was entered and the case was closed*.

[*See* D.E. #211]. Accordingly, Claimant failed to timely perfect its charging lien, and, therefore, the

charging lien should be extinguished.[1]  *See Sinclair*, 428 So.2d at 1385; *Futch*, 650 So.2d at 1015.

---

[1]A Corrected Judgment was entered by the Court on June 21, 1999. [*See* D.E. #180]. The
sole difference between the original judgment of May 27, 1999 and the corrected judgment of

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

Nevertheless, during the evidentiary hearing relating to Claimant's charging lien, Claimant

took the position that it provided Plaintiff with notice of its charging lien prior to serving its notice

of charging lien on October 12, 1999. Specifically, Mr. Wilkes testified as follows:

Q: Mr. Wilkes, with regards to the Charging Lien, did you give any previous notice regarding Gardner Wilkes' claim of a charging lien in this case?

A: Before we formally filed one with the Court?

Q: Correct.

A: Yes.

Q: And do you know when that was?

A: I don't recall.

Q: I'll direct your attention to Exhibit 232.

A: This is my letter of August 13, 1999. This is two days after I believe I had the conversation with Mr. Leon where he advised me for the first time Dr. Flynn says he's only responsible for your hourly rates. And so two days later I sent this letter to opposing counsel with a copy to Mr. Leon and to Dr. Flynn, advising them of our right to be paid out of the proceeds.

Q: And August 11th, two days prior when you spoke with Mr. Leon, that was the first time you had ever been advised that Dr. Flynn was claiming that he was limited to paying simply Gardner Wilkes' hourly billings?

---

June 21, 1999 is the Court's reservation of jurisdiction to consider Plaintiff's claim for attorney's fees against the Defendant, Sarasota Memorial Hospital. The Plaintiff's position is that the correction in the final judgment is not material to the charging lien, and, therefore, Claimant was required to serve its notice of charging lien prior to final judgment being entered on May 27, 1999. *See Sinclair*, 428 So.2d at 1385; *Futch*, 650 So.2d at 1015. Nevertheless, even assuming, *arguendo*, that final judgment was not entered in this case until the date that the judgment was corrected, i.e., June 21, 1999, Claimant's notice of charging lien is still untimely, as the notice of charging lien was not served until approximately four months after the entry of the corrected judgment. [*See* D.E. #211](showing that the notice of charging lien was served on October 12, 1999 and filed with the Court on October 13, 1999).

3

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

A: Absolutely.

[*See* Vol. II of the Transcript of the Evidentiary Hearing at pp. 35-36].

First, Mr. Wilkes' letter of August 13, 1999 simply indicates that Claimant and Plaintiff had an "arrangement . . . under which [Claimant is] to be paid out of the settlement proceeds." *See* Claimant's Exhibit 232 (brackets supplied). Said letter does ***not*** state, as is required, that Claimant is seeking a charging lien against Plaintiff. *See Schur v. Americare Transtech, Inc.*, ___ So.2d ___, 26 Fla.L.Weekly 1237 (Fla. 3rd DCA 2001). Accordingly, Mr. Wilkes' letter of August 13, 1999 does not constitute the requisite notice of a charging lien. Indeed, to hold that Mr. Wilkes' letter of August 13, 1999 constitutes notice of a charging lien simply because it indicates that Plaintiff agreed to pay Claimant its attorney's fees out of the settlement proceeds would be the equivalent of holding that any contingent fee agreement, which by its very essence indicates that the attorney's fees will be paid out of the proceeds of any settlement or judgment in the case, constitutes notice of a charging lien. Such a position is simply contrary to Florida law. *See Id.* (holding that an attorney who enters into a contingent fee agreement with a client, but does not expressly state to the client that failure to pay the fees owed will result in a charging lien, does not have a valid charging lien).

Second, even if we assume, *arguendo*, that Mr. Wilkes' letter of August 13, 1999 constitutes proper notice of a charging lien, it is still untimely because it was sent approximately three months after the entry of final judgment and approximately two months after entry of the corrected judgment. Thus, Claimant failed to provide Plaintiff with the requisite timely notice of its charging lien, and, therefore, the charging lien must be extinguished.

Claimant may argue that, given that there were post-trial motions filed after the entry of final judgment, it was not required to provide Plaintiff with notice of its charging lien before the entry of

4

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

the judgment. However, even if we assume, *arguendo*, that such an argument has merit, Claimant's charging lien is still untimely.

The undisputed evidence in this case indicates that a global settlement of all actions pending against the Defendant, Sarasota Memorial Hospital, including the underlying action, was reached on August 4, 1999. As a result of said settlement, the parties agreed that the subject underlying action "shall be dismissed with prejudice." *See* Plaintiff's Exhibit 29 at ¶ 1. Notice of the settlement, by way of the Mediator's Mediation Report, was filed with the Court on August 6, 1999 and entered on August 9, 1999, i.e., *before* Mr. Wilkes' letter of August 13, 1999 and *before* Claimant's notice of charging lien served on October 12, 1999. [*See* D.E. #209]. Thus, there is no doubt that Claimant failed to provide Plaintiff with the requisite timely notice of its charging lien, and, therefore, the charging lien must be extinguished.

### *CLAIMANT IS SEEKING A FEE IN EXCESS OF THE CONTRACT RATE*

As stated by this Court in its Report and Recommendation dated September 22, 2000, Florida law holds that a charging lien cannot be granted in an amount greater than the attorney fee amount provided for in the contract. *See Albert v. Goldman-Link, P.A.*, 661 So.2d 1293, 1294 (Fla. 4th DCA 1995), *citing Florida Patients Compensation Fund v. Rowe*, 472 So.2d 1145, 1151 (Fla. 1985); *see also* D.E. #242. Likewise, where an express agreement exists, such as in the instant matter, *quantum meruit* is not available, and the rights and obligations of the parties are governed by the terms of the agreement. *Snyderburn v. Moxley*, 657 So.2d 945 (Fla. 5th DCA 1995); *Garcia v. Cosicher*, 504 So.2d 462, 463 n.2 (Fla. 3rd DCA), *rev. denied*, 513 So.2d 1060 (Fla. 1987). Any fee agreement which purports to allow the attorney to collect a fee based on a *quantum meruit* theory for services rendered is both unenforceable and unethical. *The Florida Bar v. Hollander*, 607 So.2d 412, 415

5

<u>Flynn v. Sarasota/Gardner Wilkes v. Flynn</u>
Case No. 97-2911-CIV-T-26E

(Fla. 1993).

As the Court is well aware, the terms of the representation and fee arrangement between the

parties was originally set forth in an engagement letter drafted by Claimant, dated October 25, 1994.

The relevant portions of the engagement letter are as follows:

> For any and all services rendered, we will be paid a reasonable fee. This will
> be based on several factors, including our time, which means charges based
> upon an hourly rate for the attorney/paralegal performing a given service at
> the time of performance. This rate will vary from $110.00 to $220.00 per
> hour, depending upon the experience and level of seniority of the attorney or
> paralegal involved.
>
> * * *
>
> We will keep careful track of our time and expenses. On a regular interim
> basis, usually monthly, we will submit statements based on services rendered
> and expenses incurred to a then current date.
>
> * * *
>
> Finally, so that there is no misunderstanding as to the nature of services for
> which we will make an hourly charge, I provide the following: All
> conference time with you, witnesses, potential witnesses, and such other
> persons as we may deem appropriate; conference or trial time before any
> court or tribunal; time spent in travel or on the telephone regarding this
> matter; such conference time between attorneys in this office as we may
> deem necessary; and legal research.

*See* Plaintiff's Exhibit 1.

Subsequent to Claimant providing Plaintiff with the aforementioned engagement letter,

Claimant took on representation of Plaintiff in fifteen (15) to eighteen (18) different matters. With

the exception of a personal injury case for which Plaintiff executed a separate written contingent fee

agreement, Claimant represented Plaintiff in the fifteen (15) to eighteen (18) other matters leading

up to, and including, the underlying action based on the terms originally set forth in the

6

<u>Flynn v. Sarasota/Gardner Wilkes v. Flynn</u>
Case No. 97-2911-CIV-T-26E

aforementioned engagement letter.

As explained by Plaintiff during the evidentiary hearing, Claimant never discussed the subject engagement letter with Plaintiff, and Plaintiff simply understood the first sentence of the second paragraph of the engagement letter to be an affirmation on the part of Claimant that the hourly rates charged to Plaintiff for services rendered would be reasonable. *See* Vol. I of Transcript of the Evidentiary Hearing at p.101. Specifically, Plaintiff testified as follows:

> Q: I direct your attention to the second paragraph, first sentence, and ask you to please read that.
>
> A: "For any and all services rendered we will be paid a reasonable fee."
>
> Q: What was your understanding of what that sentence meant?
>
> A: It means that the hourly rates we were charged would be reasonable.
>
> Q: Did anybody from the Gardner Wilkes law firm discuss this engagement letter with you at any time prior to the verdict?
>
> A: No.

*Id.*

In light of the foregoing, as well as the well settled rule of contract construction which provides that a contract should be construed against its drafter, Claimant in this matter, and The Florida Bar's mandate that Claimant, like all other attorneys practicing in the State of Florida, explain its fee agreement to Plaintiff "to the extent reasonably necessary to permit [Plaintiff] to make informed decisions regarding the representation," Claimant's hourly rates billed to, and paid by, Plaintiff constitute the contract rate. *See, e.g., City of Homestead v. Johnson*, 760 So.2d 80 (Fla. 2000)(Florida Supreme Court holding that terms in a contract are to be construed against the drafter); *see also* Rule 4-1.4(b), Rules of Professional Conduct (2001)(stating that "a lawyer *shall* explain a

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

matter to the extent reasonably necessary to permit the client to make informed decisions regarding

the representation.")(emphasis supplied)).  Thus, Claimant's charging lien for an additional fee is not

permitted under Florida law, and, therefore, the charging lien should be extinguished.

The initial engagement letter clearly, unambiguously, and consistently indicates that Plaintiff

was required to pay Claimant an attorney fee based on Claimant's hourly rates.  Further, the parties

engaged in a subsequent course of conduct whereby, "[o]n a regular interim basis, usually monthly

[Claimant submitted] statements based on services rendered and expenses *incurred to a then current*

*date*," which included only Claimant's hourly rates and no indication that Claimant may seek an

additional fee.  *See* Plaintiff's Exhibit 1 (emphasis supplied)(brackets supplied).  Notwithstanding

these facts, Claimant contends in this charging lien litigation that it is entitled to an additional fee

above and beyond that which Plaintiff was billed and paid.

Claimant's argument relies solely upon the use of the term "reasonable fee" in the sentence

of the engagement letter that immediately precedes the description of the hourly rate fee to support

its claim for an additional fee.  Indeed, in addition to the aforementioned undisputed evidence that

Claimant never discussed the subject engagement letter with Plaintiff, nor explained the alleged

attorney fee agreement to Plaintiff, at any time prior to the trial, much less at the time that the fee

contract was formed, this Court specifically asked Mr. Wilkes while he was on the witness stand at

the evidentiary hearing whether there were any discussions prior to the trial with Plaintiff or his

former general counsel, Mr. Leon, concerning the possibility of an enhanced fee over and above the

hourly rate, to which Mr. Wilkes responded, "the subject never came up in any way." *See* Vol. II

of the Transcript of Evidentiary Hearing at p.38.  Yet, Claimant's proposed interpretation of the fee

agreement is contrary to elementary rules of contract construction and Florida law.

8

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

An attorney fee contract must be construed in accordance with its plain meaning. *See Acceleration Nat'l Service Corp. v. Brickell Financial Services Motor Club, Inc.*, 541 So.2d 738, 739 (Fla. 3rd DCA), *rev. denied*, 548 So.2d 662 (Fla. 1989)("In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls"). Where there are general and specific provisions in a contract relating to the same thing, the specific provisions will govern in its construction over matters stated in general terms. *Cypress Gardens Citrus Products, Inc. v. Bowen Bros., Inc.*, 223 So.2d 776 (Fla. 2d DCA 1969); *Suncoast Bldg. Of St. Petersburg, Inc. v. Russell*, 105 So.2d 809 (Fla. 2d DCA 1958). "When general positions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control." *Merrill Lynch Pierce Fenner & Smith, Inc. v. Cowen*, 62 F.3d 381 (11th Cir. 1995)(citations omitted); *see also American Sav. & Loan Assoc. of Florida v. Pembroke Lakes Regional Ctr. Assocs., Ltd.*, 908 F.2d 885, 888 n.6 (11th Cir. 1990).

Construing the subject engagement letter in accordance with its plain meaning, Plaintiff is not obligated to pay Claimant anything above the hourly rates already billed and paid. The first sentence of the second paragraph of the subject engagement letter states: "For any and all services rendered, we will be paid a reasonable fee." *See* Plaintiff's Exhibit 1. The sentence immediately following states: "***This*** will be based on several factors, including our time, which means charges based upon an hourly rate for the attorney/paralegal performing a given service at the time of performance." The pronoun "This" in the second sentence refers to the noun "reasonable fee" in the preceding sentence. Thus, an ordinary person of average understanding would construe the contract to indicate that Plaintiff would pay Claimant a reasonable fee, and the amount of the reasonable fee

9

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

"will be based on several factors...." *Id.*

The contract then indicates that the "several factors" upon which the "reasonable fee" is based " . . . means charges based upon an hourly rate for the attorney/paralegal performing a given service at the time of performance." Clearly, an ordinary person of average understanding would understand this to mean the "reasonable fee" was the hourly rate - - nothing more.

Claimant claims the adjective "several" has special significance in construing what is the "reasonable fee," in that it makes clear that the "reasonable fee" includes factors in addition to time. However, the "several factors" to be considered are specifically contemplated by Claimant in arriving at the hourly rates billed for each member of the firm. That is, the hourly rate varies "...from $110 to $220 *per hour*, depending upon the *experience* and level of *seniority* of the *attorney or paralegal* involved. *See* Plaintiff's Exhibit 1 at p.1. An ordinary person of average understanding would understand that "experience", "seniority", education or training, i.e. whether the person is an "attorney or paralegal," and time ("per hour") are the "several factors" upon which the "reasonable fee" is based.

Notwithstanding the factors expressed within the subject engagement letter as a basis for the "reasonable fee," Claimant wants to include the non-expressed factor of "results obtained" as part of the reasonable fee to be paid by the Plaintiff. Specifically, Claimant argues based on inapplicable case law relating to what is a "reasonable fee" for purposes of *quantum meruit* that the factors set forth in Rule 4-1.5(b), Florida Rules of Professional Conduct, including the factor of "results obtained," are inferred from the general term "reasonable fee." However, even assuming, *arguendo*, that *the use* of the term "reasonable fee" in the engagement letter has the inferential effect contended by Claimant, "general language of a contract must yield to specific language which deals with the

10

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

matter at issue. . . ." *Genunzio v. Genunzio*, 598 So.2d 129, 132 (Fla. 2d DCA 1992). That is, any

inference from the general term "reasonable fee" must yield to the specific language -- the amount

of the hourly rates, which addresses the amount of the attorney fee Plaintiff agreed to pay Claimant.

Thus, as pointed out by this Court in its Report and Recommendation of September 22, 2000, "as

between the firm and the client, the reasonable fee was established by the market rate hourly billing

and Plaintiff's payment thereof." *See* D.E. #242.

In *May v. Sessums*, 700 So.2d 22, 23-24 (Fla. 2d DCA 1997), the Second District Court of

Appeal had before it an attorney fee contract that required the client to pay a "reasonable fee" based

on several factors *expressly* stated in the fee agreement, including additional fees that "may be

requested based upon . . . the results obtained." Notwithstanding the fact that, unlike the contract

in the instant matter, the *May* contract expressly stated that the "results obtained" would be a factor

for the additional fee, the Second District Court of Appeal invalidated the provision regarding the

"results-based fee" as an unenforceable agreement to agree. *See Id.* at 25. In reaching that decision,

the Second District adopted *Corbin's* two-part analysis required to determine reasonable fees for

attorney fee contracts:

> If the parties provide a practicable method for determining . . . compensation,
> there is no such indefiniteness or uncertainty as will prevent the agreement
> from being an enforceable contract. . . . [However, where] *the parties have*
> *not expressly or implicitly agreed upon a "reasonable price," and also have*
> *not prescribed a practicable method of determination, . . . the agreement is*
> *too indefinite and uncertain for enforcement*.

*Id.* at 26-27, *citing 1 Corbin on Contracts* § 4.3, at 567 (Joseph M. Perillo, Rev. Ed. 1993)(emphasis

supplied). That is, in order to have an enforceable fee contract for a "reasonable fee," the contract

*must* set forth a method for determining such "reasonable fee." *See Id.; Suggs v. DeFranco's, Inc.,*

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

626 So.2d 1100 (Fla. 1st DCA 1993)(holding that "where central terms of an agreement remain open, subject to future negotiations, there can be no enforceable contract").  As such, pursuant to *May*, the only ***permissible*** interpretation of the subject engagement letter is that the "reasonable fee" is determined based on the hourly rates multiplied by the time required to perform the services rendered.

Moreover, the *May* decision provides guidance as to how the Second District Court of Appeal would view Claimant's arguments herein.  Specifically, in conjunction with its holding that the attorney in the *May* case was not entitled to an additional "result-based fee" because the client was not advised of a practicable method of arriving at same, the Court states that the Rule 4-1.5(b), Florida Rules of Professional Conduct, factors expressly set forth in the *May* contract are insufficient to permit a client to determine the method for arriving at the additional result-based fee.

> [W]hile the "considerations" of the Sessums/May contract *may* be meaningful to Mr. Sessums or other attorney experts, they provide little, if any, practicable method by which Mrs. May can relate them to any proposed fee. The client in such a case is left to the mercy of the contracting attorney and those experts qualified to opine as to the attorney's worth.

*Id.* at 27.  Given that the Second District Court of Appeal did not permit the attorney in the *May* case to recover anything above and beyond the hourly rates billed and paid by the client, despite the fact that such case involved a written attorney fee contract that expressly stated that an additional fee "may be requested based upon . . . the results obtained," *see Id.* at 23-24, clearly, Claimant is not entitled to the additional fee it seeks based on the subject fee agreement.

### *THE COURSE OF CONDUCT BETWEEN THE PARTIES AND THE PAROL EVIDENCE ESTABLISH THAT CLAIMANT IS NOT ENTITLED TO ANYTHING ABOVE THE HOURLY RATES BILLED AND PAID*

Based on the foregoing, the Court need not consider parol evidence, as the subject fee

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

contract is clear and unambiguous. Nevertheless, it is well settled that the Court may consider the

conduct of the parties through their course of dealings to determine the meaning of a written

agreement. *Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So.2d 404, 407 (Fla.

1974); *see also Seal Products v. Mansfield*, 705 So.2d 973 (Fla. 3rd DCA 1998). In the instant

matter, aside from the initial engagement letter unambiguously establishing that Plaintiff is not

required to pay Claimant anything above and beyond the hourly rates billed and paid, the subsequent

course of conduct between the parties, as well as the parol evidence introduced during the

evidentiary hearing, establish that Claimant is not entitled to anything above and beyond the hourly

rates billed and paid by Plaintiff.

Mr. Wilkes testified during the evidentiary hearing that, with the exception of a personal

injury case Claimant handled on behalf of Plaintiff pursuant to a mutually executed contingent fee

agreement, Plaintiff had the same fee contract in all of the fifteen (15) to eighteen (18) matters for

which Claimant represented Plaintiff between October 1994 and September 1999. Consistent with

Plaintiff's undisputed testimony that it was his understanding, and subjective intent, to pay Claimant

an hourly rate fee, Plaintiff was billed an hourly rate fee on an approximate monthly basis. *See*

Plaintiff's Exhibit 7. It is undisputed that (1) Claimant never communicated to Plaintiff that the

results obtained would be a factor in the fee owed by Plaintiff at any time prior to the trial in the

underlying action; (2) Claimant informed Plaintiff that the interim monthly billing statements were

"based on services rendered and expenses incurred to a then current date;" (3) Claimant never

communicated to Plaintiff that the monthly billing statements sent to, and paid by, Plaintiff were ***not***

for all "services rendered and expenses incurred to a then current date," as indicated in the initial

engagement letter; and (4) all hourly rate fees and costs have been paid.

13

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

Moreover, Mr. Wilkes' testimony illustrates that at the time the fee contract was formed, it was not even his subjective intent to be entitled to an adjustment of the fee amount based on the results obtained. Specifically, Mr. Wilkes testified that, *after* the verdict in the underlying action and well *after* the formation of the fee contract, he felt he needed to ask Plaintiff whether Plaintiff understood the subject fee contract to provide for an adjustment based on the results obtained before he could make such representation to the Court in support of his attempt to secure an attorney fee multiplier against the Defendant, Sarasota Memorial Hospital. Such testimony, coupled with the fact that Claimant never returned any of the approximate eighty-five thousand dollars ($85,000.00) it received from Plaintiff in conjunction with Claimant's filing of a Section 1983 action on behalf of Plaintiff in 1994, prior to Plaintiff's exhaustion of his state remedies, as well as the fact that Mark Buell's affidavit, attached as Exhibit "B" to Plaintiff's Exhibit 23, indicates, based upon Mr. Buell's discussions with Mr. Wilkes, that the fee agreement between Plaintiff and Claimant provides for an hourly rate fee, belies Claimant's contention in the instant charging lien litigation. *See* Plaintiff's Exhibit 23, Exhibit "B", at ¶ 8. This is especially true in light of the fact that Claimant's own business records state that Plaintiff was to pay an hourly rate fee. *See* Plaintiff's Exhibit 22. Accordingly, even considering the course of conduct between the parties subsequent to the engagement letter and parol evidence, Claimant is not entitled to anything above and beyond the hourly rate fees billed and paid by Plaintiff.

Notwithstanding, Claimant relies on the following in support of its claim for an additional fee: (1) Plaintiff was allegedly permitted to have a large amount of arrears in attorney's fees and costs due to the interim results; (2) Claimant allegedly adjusted Plaintiff's pre-bills and provided "courtesy discounts" as a result of the interim results; (3) Dr. Moore testified that in the latter part of April

14

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

1999 Plaintiff allegedly stated that Claimant "would be taken care of in the end;" and (4) Claimant

filed a motion for attorney's fees and costs against the Defendant, Sarasota Memorial Hospital, which

sought a multiplier due, in part, to Mr. Buell's "assumption" that Plaintiff agreed to pay Claimant

a "reasonable fee," with adjustments to be made based upon the results obtained.   None of the

foregoing justifies the additional fee Claimant is seeking.

First, such claimed leniency and reductions or discounts are not probative of the terms of the

fee contract or the subjective intent of the parties, given the undisputed fact that Claimant *never*

conveyed to Plaintiff prior to securing the verdict in the underlying action, much less when the

contract was formed, that (1) the results obtained would be a factor in the computation of the fee;

(2) the interim billing statements reflected only a portion of the fee Plaintiff owed for the services

rendered through the date of the statement, as opposed to being "based on services rendered and

expenses *incurred to a then current date*," as expressly stated in the engagement letter and like in

the 14 to 17 other matters Claimant handled on behalf of Plaintiff; and (3) Claimant never

communicated to Plaintiff that the alleged leniency toward Plaintiff's arrears, and/or that Claimant

allegedly reduced the pre-bills and provided "courtesy discounts" to Plaintiff, due to the interim

results.

Second, Dr. Moore's testimony that Plaintiff told him in April 1999, when Plaintiff and Dr.

Moore were discussing the outstanding fees and costs owed to Claimant, that "Mr. Wilkes will be

taken care of in the end," is completely consistent with the undisputed fact that Plaintiff verbally

agreed in March 1999, and signed a written agreement in April 1999, to pay Claimant all outstanding

fees and costs out of the proceeds of any judgment or settlement.  *See* Plaintiff's Exhibits 10, 13.

Finally, Plaintiff's counsel's filing of the Motion for Attorney's Fees and Costs against the

15

<u>Flynn v. Sarasota/Gardner Wilkes v. Flynn</u>
Case No. 97-2911-CIV-T-26E

Defendant, Sarasota Memorial Hospital, is in no way probative of Plaintiff's subjective intent as to

the subject fee agreement because (1) Claimant did not discuss the Motion for Attorney's Fees with

Plaintiff directly; rather, the discussions were held between Mr. Wilkes, Mr. Leon, and Mr. Buell;

and (2) when this Court asked Mr. Wilkes whether such discussions arose in the context of trying

to obtain an enhanced fee against the hospital, Mr. Wilkes answered, "that's how the issue came up."

*See* Vol. II of Transcript of the Evidentiary Hearing at pp.39-41. As such, Mr. Buell's affidavit filed

in support of the Motion for Attorney's Fees, like all of the other evidence relied on by Claimant,

does not entitle Claimant to anything above and beyond the hourly rate fees billed and paid by

Plaintiff.

### CLAIMANT'S "UNCLEAN HANDS" BAR
### THE ENFORCEMENT OF THE CHARGING LIEN

"The [attorney] charging lien is an ***equitable*** right to have costs and fees due an attorney[.]"

*Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So.2d 1383, 1384

(Fla.1983)(emphasis supplied). Consequently, the doctrine of "unclean hands" will prevent an

attorney from enforcing a charging lien against his or her client if a rule of professional conduct

directly relating to the client from whom he is seeking the lien has been violated. *See Afrazeh v.*

*Miami Elevator Company of* America, 769 So.2d 399 (Fla. 3d DCA 2000); *Snyderburn v Bantock*,

625 So 2d 7, 14 (Fla. 5th DCA1993)(precluding enforcement of attorney's otherwise valid charging

lien where the contract of representation violated the Rules of Professional Conduct). Accordingly,

even assuming, *arguendo*, that Claimant has established a timely and valid charging lien,

enforcement of same is barred by Claimant's admitted failure to comply with the Rules of

Professional Conduct applicable to its claimed interpretation of the subject fee contract.

16

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

Rule 4-1.5(e), Florida Rules of Professional Conduct, states:

**(e) Duty to Communicate Basis or Rate of Fee to Client.**   When the lawyer has not regularly represented the client, the basis or rate of the fee **shall**[2] be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

(emphasis supplied).

Rule 4-1.4(b), Florida Rules of Professional Conduct, states:

**(b) Duty to Explain Matters to Client.**   A lawyer **shall**[3] explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(emphasis supplied).   Both Rules 4-1.5(e) and 4-1.4(b) have been interpreted by the The Florida Bar and the Florida Supreme Court to require Florida lawyers, such as Claimant herein, to clearly communicate the basis and rate of their fee to their clients. *See The Florida Bar v. Vining*, 761 So.2d 1044 (Fla. 2000).   One of the obvious reasons for such a requirement is to ensure that the client understands the amount owed to his or her attorney so he or she can make an informed decision regarding, among other things, settlement. *See Id.* at 1047(Florida Supreme Court upholding finding of violations of Rules 4-1.4(b) and 4-1.5(e) due to, *inter alia*, attorney not billing his client for an additional fee until after settlement).   Claimant's admitted failure (1) to communicate to Plaintiff in October 1994, or at any subsequent time through when verdict was secured, that the fee would be based on the results obtained, in violation of Rule 4-1.5(e); and (2) to communicate to Plaintiff,

---

[2]   A rule of professional conduct is an imperative when cast in the term "shall." *See* Scope of the Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities, Florida Rules of Professional Conduct (2001).

[3]   A rule of professional conduct is an imperative when cast in the term "shall." *See* Scope of the Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities, Florida Rules of Professional Conduct (2001).

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

prior to settlement being reached on August 4, 1999, both its definitive claim to entitlement of an

additional fee and the specific amount of same, in violation of Rule 4-1.4(b), bars enforcement of

Claimant's charging lien.[4]  *See, generally Snyderburn*, 625 So.2d 7.

Moreover, Claimant's reliance on Plaintiff's alleged arrears in support of its claim for an

upward adjustment of its fees violates Rule 4-1.5(h).  Specifically, Rule 4-1.5(h) precludes a Florida

lawyer from seeking an enhanced or higher fee from his or her client as a result of the lawyer or law

firm making charges on behalf of the client.  *See* Rule 4-1.5(h), Fla. R. Pro. Conduct.  Thus, for the

above stated reasons, the charging lien should be extinguished.

### CLAIMANT HAS BEEN PAID A "REASONABLE FEE"

Even assuming, *arguendo*, that Claimant has a timely, valid charging lien, which is not

barred by the doctrine of "unclean hands," Claimant is not entitled to any additional money.  As

established during the evidentiary hearing, Plaintiff paid his lawyers over One Million Dollars

($1,000,000.00) for the "results obtained."  That is, as mentioned above, the underlying litigation

came to an ultimate conclusion on August 4, 1999, when Plaintiff entered into a global settlement

relating to all litigation against the Defendant, Sarasota Memorial Hospital.  *See* Plaintiff's Exhibit

---

[4]  While both parties agree Claimant broached the subject of requesting an additional fee
from Plaintiff following the verdict, the undisputed evidence shows that as of the date of
settlement, August 4, 1999, Claimant had still not definitively claimed entitlement to an
additional fee.  *See* Wilkes's letter of 8/4/99 to Plaintiff at Plaintiff's Exhibit 16 (stating "we *may*
wish to make an adjustment to our fees based upon various factors including the results obtained,
*if appropriate*." (emphasis supplied)).  The fact that Claimant had not yet decided to pursue an
additional fee, much less informed Plaintiff of same, prior to settlement is further supported by
Mr. Wilkes handwritten notes relating to his telephone conversation with Mr. Rogow at 5:30
p.m. on August 4, 1999 and Claimant's pre-bill relating to this matter generated on August 4,
1999.  *See* Plaintiff's Exhibit 17 (Wilkes' handwritten notes indicating, "If there is nothing *in the*
agr. Can't we charge a reasonable fee even w/o an agreement");  Plaintiff's Exhibit 15 (stating
total unbilled fees as 8/4/99 are $15,373.71).

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

29. Such settlement amicably resolved, through monetary and non-monetary terms, litigation which was initiated by Claimant in October 1994 and continued until the date of settlement. *Id.* To ultimately secure the settlement, Plaintiff paid Claimant $681,888.62, *see* Plaintiff's Exhibits 3; 6; approximately $175,000.00 to Anthony Leon, Esquire; and $162,500.00 to Bruce Rogow, Esquire, totaling $1,019,388.62. To allow Claimant to receive anything above the $681,888.62 it received, pursuant to payments made by Plaintiff virtually on a monthly basis over the course of approximately 60 months, would, respectfully, be unreasonable. Plaintiff has not disputed, nor is he disputing, Claimant's entitlement to the hourly rate fees it regularly billed and was paid; however, Claimant simply is not entitled to anything more.

## *CONCLUSION*

For the above and foregoing reasons, Plaintiff prays that this Honorable Court dismiss Claimant's charging lien, declare that Claimant is not entitled to any additional fees from Plaintiff, and grant Plaintiff reasonable attorney's fees and costs pursuant to Florida Statute Section 57.105 and Rule 54, Federal Rules of Civil Procedure.

Respectfully submitted,

Scott A. Forman, Esq.
Thomas Stewart, Esq.

19

Flynn v. Sarasota/Gardner Wilkes v. Flynn
Case No. 97-2911-CIV-T-26E

    **I HEREBY CERTIFY** a true and correct copy of the foregoing was mailed this 31st day of July, 2001 to:

Richard Benjamin Wilkes, Esq.
Gardner, Wilkes, Shaheen & Candelora
401 East Jackson St., Suite #2650
P.O. Box 1810
Tampa, FL  33601

                VERNIS & BOWLING OF MIAMI, P.A.
                1680 N.E. 135th Street
                North Miami, Florida  33181
                (305) 895-3035 / (305) 892-1260 (fax)

By:_____
          Scott A. Forman, Esq.
          Florida Bar No. 065950
          Thomas Stewart, Esq.
          Florida Bar No. 108464

SF/mm
597/10048
C:\WINDOWS\Temporary Internet Files\Content.IE5\GTIJOHIB\memo law charging lien.wpd